CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
May 20, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES KENZELL CARTER, ) | |
|    Plaintiff, ) | Civil Action No. 7:23-cv-00333 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| J. BOYD, *et al.*, ) |     United States District Judge |
|    Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Charles Kenzell Carter, an inmate in the custody of the Virginia Department of Corrections (VDOC) and proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983. His complaint arises from events that occurred during a one-month period in the fall of 2022, while he was incarcerated at Red Onion State Prison (Red Onion). The complaint names as defendants the VDOC, VDOC Regional Administrator Carl Manis, and four members of the correctional staff at Red Onion—Lt. Massengill and Officers J. Boyd, D. Bland, and Lucas.

The case is before the court for review pursuant to 28 U.S.C. § 1915A(a). For the reasons set forth below, the court concludes that Carter's federal claims are subject to dismissal for failure to state a claim upon which relief may be granted, and the court declines to exercise supplemental jurisdiction over any claims asserted under state law.

I.   BACKGROUND

Carter is a Sunni Muslim inmate currently incarcerated at Wallens Ridge State Prison. (Compl. 3, Dkt. No. 1; Notice of Change of Address, Dkt. No. 15.) At the time his complaint was filed, Carter was confined at Red Onion.

As a Sunni Muslim, Carter avoids eating pork or other foods that have come in contact with pork. (*See* Compl. 3 ("I . . . separate my food from pork.").) Because of his religious

dietary restrictions, Carter does not eat from the regular menu offered by the VDOC. Instead, he receives prepackaged meals served as part of the VDOC's sealed religious diet. (*Id.*); *see also* VDOC Food Service Manual Chapter 4, § 6(D) (2023), *available at* https://vadoc.virginia.gov/files/operating-procedures/500/vadoc-op-500-1-c4.pdf (last visited May 17, 2024) (explaining that the sealed religious diet "provides inmates whose religious dietary needs cannot be met by the Master Menu and the Common Fare diet with an appropriate religious diet" and that "[t]he prepackaged meals must be sealed and double wrapped in foil or plastic during cooking and when served").[1]

While housed in segregation at Red Onion on September 23, 2022, Officer Mullins, who is not named as a defendant, served Carter his sealed religious diet tray while wearing the same gloves that Mullins wore to serve a regular tray to another inmate. Carter alleges that a VDOC policy provides that regular trays and special diet trays must be served separately and that Mullins violated the policy by failing to change his gloves. (Compl. 3.)

On September 26, 2022, Carter submitted a written complaint alleging that Mullins had violated VDOC policy on September 23, 2022, by not changing his gloves before serving Carter a sealed religious diet meal. (Compl. Ex. A, ECF No. 1-1.) In a response dated September 30, 2022, defendant Massengill advised Carter that he had spoken to Mullins regarding the applicable feeding policy and that he had made Mullins "aware of the process of changing gloves." Consequently, Massengill noted that the issue had been resolved. (*Id.*)

Carter alleges that defendants Bland, Lucas, and Boyd committed the same policy violation on three separate occasions over the next three weeks. On October 6, 2022, Bland

---

[1] Carter references Food Service Menu Chapter 4 and other VDOC policies in his complaint. Although this particular policy is not part of the record, the court is entitled to take judicial notice of it. *See Gordon v. Schilling*, 937 F.3d 348, 353 n.6 (4th Cir. 2019).

served Carter a sealed religious diet tray while wearing the same gloves that he wore to deliver a regular tray to another inmate. When Carter voiced an objection, Bland advised Carter that he could "take the tray or [not] eat." Bland then gave Carter a replacement tray "that had syrup under the bottom of the . . . tray." (*Id.* at 4.) Three days later, on October 9, 2022, Lucas served Carter a sealed religious diet tray without changing his gloves and demanded that Carter take the tray. (*Id.* at 5.) Similarly, on October 20, 2022, Boyd entered the housing unit with a cart containing regular trays, common fare diet trays, and sealed religious diet trays, and picked up Carter's tray without changing her gloves. When Carter advised Boyd that she was violating VDOC policy, Boyd expressed the belief that she only had to change her gloves before serving meals to inmates on the common fare diet. (*Id.* at 6.)

Carter alleges that he filed written complaints following the incidents with Bland, Lucas, and Boyd, and that Massengill responded on each occasion that correctional staff had been trained on proper feeding procedures. (*Id.* at 4–7.) Carter alleges that he also filed regular grievances regarding the incidents and that the warden determined that the grievances were founded. (*Id.* at 5–8.) Carter alleges that defendant Manis upheld each of the warden's decisions but "failed to put his signature on the last level of appeal" for the grievance filed against Boyd. (*Id.* at 7–8.) Carter further alleges that he suffered emotional distress as a result of the incidents involving Bland, Lucas, and Boyd. (*Id.* at 10.)

Carter filed this action more than six months after the correctional officers allegedly mishandled his sealed religious diet trays. In a section of the complaint titled "Claims for Relief," Carter lists five claims or groups of claims. The claims are summarized as follows:

> **Claims 1 and 3**: Defendants Bland, Lucas, and Boyd violated the Religious Freedom Restoration Act (RFRA), the Religious Land Use and Institutionalized Persons Act (RLUIPA), and the First Amendment by requiring him to take a sealed religious diet tray

3

>    that was served without changing their gloves in violation of VDOC policy.
>
>    **Claim 2**: Defendant Massengill acted with deliberate indifference in violation of the Eighth Amendment and is subject to supervisory liability for failing to adequately train staff on the proper handling of sealed religious diet trays.
>
>    **Claim 4**: Defendant Manis violated Carter's Fourteenth Amendment right to due process and state law by failing to sign his decision at the final level of appeal for the grievance filed against Boyd.
>
>    **Claim 5**: Carter asserts a catch-all claim covering "any and all arguments [and] claims not specifically articulated in the complaint that warrant relief" under the First Amendment.

(*Id.* at 10–12.)   At the conclusion of the complaint, Carter requests monetary and declaratory relief, and asks that the individual defendants named in the complaint be terminated from their jobs.  (*Id.* at 12–13.)

## II.  DISCUSSION

### A.  Standard of Review

Pursuant to 28 U.S.C. § 1915A(a), the court is required to conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."   On review, the court must "dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted."   28 U.S.C. § 1915A(b).

To withstand dismissal for failure to state a claim, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   To satisfy this requirement, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   Pleadings filed by *pro se* litigants are given a liberal construction and

held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Nonetheless, a complaint filed by a *pro se* plaintiff "must still 'state a claim to relief that is plausible on its face.'" *Sakyi v. Nationstar Mortg., LLC*, 770 F. App'x 113, 113 (4th Cir. 2019) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). Applying these standards to Carter's complaint, the court concludes that it fails to state a claim for relief under federal law against any of the named defendants.

**B.   Availability of Relief under Section 1983, RFRA, and RLUIPA**

As an initial matter, any claim asserted against the VDOC under 42 U.S.C. § 1983 must be dismissed because a state agency is not a "person" subject to liability under the statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The same is true for any claims for damages against the individual defendants in their official capacities. *Id.*; *see also Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) ("[W]hereas 42 U.S.C. § 1983 permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief.").

To the extent that Carter seeks relief under RFRA, he has no viable claim under the statute since the defendants are not federal actors. *See* 42 U.S.C. § 2000bb-1(c) (permitting a person whose religious exercise has been burdened in violation of the statute to "assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government"); 42 U.S.C. § 2000bb-2(1) (defining "government" to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States"); *see also Potter v. District of Columbia*, 558 F.3d 542, 546 n.1 (D.C. Cir. 2009) (noting that "RFRA does not apply to state governments").

Additionally, the Eleventh Amendment bars Carter's claims under § 1983 against the VDOC, his claims for damages under § 1983 against the individual defendants in their official capacities, and his claims for damages under RLUIPA against the VDOC and the individual defendants in their official capacities. Under the Eleventh Amendment, "an unconsenting State is immune from suit brought in federal court by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "This immunity extends to arms of the State," including state agencies and state officials acting in their official capacities. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). "While Congress may abrogate a State's Eleventh Amendment immunity by express statutory language, it has long been settled that 42 U.S.C. § 1983 . . . does not effect such an abrogation." *In re Sec'y of Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1149 (4th Cir. 1993). Likewise, the Supreme Court has held "that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUPA because no statute expressly and unequivocally includes such a waiver." *Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *see also Rendelman v. Rouse*, 569 F.3d 182, 187 (4th Cir. 2009) ("RLUIPA does not authorize claims for money damages against an official who is sued in her official capacity.").

RLUIPA also does not permit claims for damages against state officials in their individual capacities. *Rendelman*, 569 F.3d at 184; *see also Landor v. La. Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 344 (5th Cir. 2023) (concluding that an inmate "cannot recover monetary damages against the defendant-officials in their individual capacities under RLUIPA"). Instead, the "only potential remedies under RLUIPA are equitable." *Wall v. Wade*, 741 F.3d 492, 496 n. 5 (4th Cir. 2014); *see also Banks v. Sec'y Pa. Dep't of Corr.*, 601 F. App'x 101, 103 (3d Cir. 2015) (noting that the "only relief potentially available to [the plaintiff inmate] for his

RLUIPA claims is injunctive or declaratory"). And because Carter has been transferred from Red Onion to a different facility and his complaint does not allege an ongoing violation of his religious rights, any request for injunctive or declaratory relief under RLUIPA must be dismissed. *See Rendelman*, 569 F.3d at 186 ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."); *see also Ofori v. Fleming*, No. 7:20-cv-00344, 2022 WL 3584904, at *20 (W.D. Va. Aug. 22, 2022) ("Because there is no ongoing violation of his religious rights . . . , [plaintiff's] RLUIPA claim must be dismissed because RLUIPA only permits injunctive relief to prevent future harm.").

**C. First Amendment Claims**

Carter alleges that Bland, Lucas, and Boyd violated his First Amendment right to freely exercise his religion by delivering and requiring him to accept a sealed religious diet tray that was handled using the same gloves that were worn to deliver a regular meal tray. Carter asserts that Massengill is subject to supervisory liability for failing to adequately train the correctional officers on the proper handling of religious diet trays. He also seeks relief for any violations of the Free Exercise Clause of the First Amendment that are not "specifically articulated in the complaint." (Compl. 11–12.)

The Free Exercise Clause "requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." *Greenhill v. Clarke*, 944 F.3d 243, 253 (4th Cir. 2019). "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018). "[A] substantial burden is one

7

that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of her religion on the other hand." *Greenhill*, 944 F.3d at 250 (citing *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).

Courts have explained that the substantial burden test requires, at a minimum, that a plaintiff "demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice." *Smith v. Allen*, 502 F.3d 1255, 1278 (11th Cir. 2007) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011)). No substantial burden occurs if the government action merely makes the "religious exercise more expensive or difficult," but fails to pressure the adherent to violate his religious beliefs or abandon one of the precepts of his religion. *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007).

The facts alleged in Carter's complaint fail to state a cognizable claim for relief under the Free Exercise Clause. Carter alleges that Lucas, Bland, and Boyd—on three occasions in the fall of 2022—delivered and required him to accept a tray containing his sealed religious meal that was handled using the same gloves that were worn to deliver a regular meal tray. While Carter claims that the officers' handling of the meal trays violated VDOC policy, he does not plausibly allege that the officers' actions burdened—much less substantially burdened—his ability to practice his particular religious beliefs. Notably, Carter does not allege that any of prepackaged foods served on the sealed religious diet trays at issue actually came into contact with pork or pork products, or that he ate any food that had been contaminated by pork. Even if he had, courts have held that "an isolated, intermittent, or otherwise *de minimis* denial or

8

interruption of an inmate's religiously required diet does not substantially burden his religious beliefs." *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1054 (8th Cir. 2020) (collecting cases); *see also Morgan v. Patterson*, 772 F. App'x 117, 119 (5th Cir. 2019) (observing that the plaintiff "alleged only isolated incidents resulting in the denial of kosher meals, which are insufficient to state a First Amendment claim"); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (finding no First Amendment violation where the plaintiff alleged "only isolated incidents" of being served non-kosher food); *Cannon v. Jones*, No. 1:23-cv-00097, 2023 WL 4761616, at *4 (E.D. Mo. July 26, 2023) ("[A]though Muslim inmates have the right to avoid contact with pork or any food that has been contaminated with pork, plaintiff's claim of a one-time incident of receiving a meal with pork cannot be said to substantially burden his exercise of religion.") (citation omitted); *Cooper v. Nimirowski*, No. 1:14-cv-00011, 2014 WL 1003842, at *1 (D.N.H. Mar. 13, 2014) ("Cooper's allegation that, on two occasions, he was served a meal that contained pork is insufficient to assert a plausible claim that his religious practice has been 'substantially burdened' under either the First Amendment or RLUIPA."); *Blount v. Jabe*, No. 7:07-cv-00480, 2007 WL 3275150, at *4 (W.D. Va. Nov. 5, 2007) ("Plaintiff's allegation that the two instances of serving him trays allegedly out of conformity with the Common Fare diet violates [RLUIPA] likewise fails . . . as plaintiff has not shown that these isolated incidents substantially burdened his exercise of religion."). The court likewise concludes that Carter's allegations of isolated acts of mishandling his meal trays fail to state a cognizable claim under the First Amendment against any of the named defendants.[2]

---

[2] The court notes that in the absence of a sufficiently alleged constitutional violation by a subordinate employee, Carter's claim for supervisory liability against Massengill "necessarily fails." *Givens v. O'Quinn*, 121 F. App'x 984, 991 n.6 (4th Cir. 2005); *see also Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001) ("The law is quite clear in this circuit that a section 1983 failure-to-train claim cannot be maintained . . . in a case where there is no underlying constitutional violation . . . .").

To the extent that Carter also seeks relief for any violations of the First Amendment that are not specifically alleged in his complaint, such claim plainly fails to provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). Accordingly, this claim will be dismissed.

**D. Eighth Amendment Claim Against Massengill**

Carter alleges that Massengill acted with "deliberate indifference" in violation of the Eighth Amendment. (Compl. 10–11.) The Eighth Amendment's prohibition of cruel and unusual punishment "applies to claims by prisoners against corrections officials challenging conditions of confinement." *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019). "Like any other Eighth Amendment claim, an Eighth Amendment conditions of confinement claim has (1) objective and (2) subjective components." *Id.* (internal quotation marks and citations omitted). To satisfy the objective component, a prisoner must set forth facts showing that the deprivation alleged was sufficiently serious. *Id.* "Only extreme deprivations" are sufficient to satisfy this component. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). In particular, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions" or "demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (internal quotation marks and citations omitted). To satisfy the subjective component, an inmate must show that the prison official "actually kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is an "exacting standard" that is not met by a showing of "mere negligence or even civil recklessness." *Jackson*, 775 F.3d at 178.

Applying these standards, the court concludes that Carter's complaint fails to state a cognizable violation of the Eighth Amendment. The complaint does not contain any factual

10

allegations suggesting that Massengill actually knew of and disregarded an extreme deprivation or a substantial risk of serious harm. Although Carter alleges that he suffered emotional distress as a result of his interactions with Bland, Lucas, and Boyd in the fall of 2022, he does not plausibly allege that Massengill was aware that the officers' handling of his meal trays posed a substantial risk of serious harm to his mental health, or that Massengill actually knew of and ignored a serious need for mental health treatment resulting from the incidents at issue. Consequently, the Eighth Amendment claim against Massengill will be dismissed.

### E. Fourteenth Amendment Due Process Claim Against Manis

In his final federal claim, Carter alleges that defendant Manis failed to sign his decision at the final level of appeal for the grievance Carter filed against Boyd. Carter claims that Manis's failure to sign the decision violated his right to due process under the Fourteenth Amendment. This claim is also subject to dismissal. The United States Court of Appeals for the Fourth Circuit has held that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure" and that "[a]n inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Consequently, the mere failure to sign a grievance response or appeal is not actionable under § 1983. *See, e.g.*, *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014) (explaining that because an inmate "had no constitutionally protected liberty interest in access to the prison's grievance procedure, he cannot base a § 1983 claim on the Defendants' response to his grievances").

### F. Claims under State Law

In the introduction to the complaint, Carter states that he "also allege[s] state law violations under state tort." (Compl. 1.) And as part of his claim against Manis, Carter alleges

11

that Manis violated "Virginia state laws" applicable to grievances filed by inmates.  (*Id.* at 11.) In light of the dismissal of the federal claims asserted in the complaint, the court declines to exercise supplemental jurisdiction over any claims asserted under state law and will dismiss those claims without prejudice.  *See* 28 U.S.C. § 1367(c) (authorizing a district court to decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction"); *see also Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018) ("Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendant state law claims by dismissing those claims without prejudice.").

### III.  CONCLUSION

For the foregoing reasons, the court will dismiss Carter's claims under federal law pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim, and the court will dismiss the remaining claims under state law without prejudice under 28 U.S.C. § 1367(c).  In light of the court's rulings, Carter's motion for service of the complaint (Dkt. No. 8) will be denied as moot. An appropriate order will be entered.

Entered: May 20, 2024.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge